UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAFONZO R. TURNER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>N. RIAZ, et al.,<br><br>　　　　Defendants. | No. 2:16-cv-0969 MCE AC P<br><br>**FINDINGS AND RECOMMENDATIONS** |

## I.　**Introduction**

Plaintiff Lafonzo R. Turner is a state prisoner who proceeds in forma pauperis and with appointed counsel in this civil rights action under 42 U.S.C. § 1983. The case proceeds on plaintiff's original complaint, on claims that defendant CDCR physicians N. Riaz and V.M. Duc, and CDCR clinical social worker H. Nguyen, were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment during plaintiff's incarceration at California State Prison Sacramento (CSP-SAC). See ECF No. 1.

Defendants' motion for summary judgment, ECF No. 56, is before the court. The motion was heard by the undersigned on August 20, 2019. Alexander Nowinski appeared on behalf of plaintiff, and Deputies Attorney General Sarah Brattin and Lawrence Bragg appeared for defendants.

////

This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the reasons that follow, this court recommends that defendants' motion for summary judgment be granted.

**II.     Background**

Plaintiff filed his original complaint in May 2016. On screening, the court found that plaintiff had stated cognizable Eighth Amendment claims against defendants Riaz, Duc and Nguyen. ECF No. 12. Former CSP-SAC Warden Macomber was dismissed from the action. See ECF Nos. 12, 36, 39. After waiving service of process, ECF No. 21, defendants unsuccessfully challenged plaintiff's in forma pauperis status. See ECF Nos. 22, 30, 32. Defendants ultimately answered the complaint on February 9, 2018. ECF No. 33.

In September 2018, the court granted plaintiff's request for appointment of counsel. ECF No. 43. Defendants filed their pending motion for summary judgment on May 15, 2019. ECF No. 56. Plaintiff has opposed the motion, ECF No. 63, and defendants filed a reply, ECF No. 64.

**III.    Legal Standards**

    **A.     Motions for Summary Judgment**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A), (B).

////

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment ... is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. Moreover, "[a] [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

////

////

### B. Deliberate Indifference to Serious Medical Needs

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (internal citations, punctuation and quotation marks omitted). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendant possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104), overruled on other grounds by WMX Techs. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Examples of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200-01 (9th Cir. 1989)).

The requisite state of mind is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citation omitted). This requires a showing greater than medical malpractice, negligence, or civil recklessness. Farmer v. Brennan, 511 U.S. 825, 837 & n.5 (1994); Wood, 900 F.2d at 1334. To establish deliberate indifference, a prisoner must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. It is not enough that a reasonable person would have known of the risk or that a defendant should have known of the risk. Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). Rather, deliberate indifference is established only where the defendant subjectively knows of a risk and deliberately

disregards it, causing harm. Id.; Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Whether a defendant had requisite knowledge of a substantial risk of harm is a question of fact. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. The inference of knowledge from an obvious risk has been described by the Supreme Court as a rebuttable presumption, and thus prison officials bear the burden of proving ignorance of an obvious risk. . . . [D]efendants cannot escape liability by virtue of their having turned a blind eye to facts or inferences strongly suspected to be true . . . ." Coleman v. Wilson, 912 F. Supp. 1282, 1316 (E.D. Cal. 1995) (citing Farmer, 511 U.S. at 842-43) (internal quotation marks omitted).

When the risk is not obvious, the requisite knowledge may still be inferred by evidence showing that the defendant refused to verify underlying facts or declined to confirm inferences that he strongly suspected to be true. Farmer, 511 U.S. at 842. Prisons officials may avoid liability by demonstrating "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844. Thus, liability may be avoided by presenting evidence that the defendant lacked knowledge of the risk or that his response was reasonable in light of all the circumstances. Id. at 844-45; see also Wilson, 501 U.S. at 298; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010).

**IV. Facts**

    **A. Undisputed Facts**

For purposes of summary judgment, the following facts are undisputed by the parties or as determined by the court upon review of the record.[1]

- At all times relevant to this action, plaintiff Lafonzo R. Turner was a state prisoner

---

[1] The facts are taken from the verified complaint and attached exhibits, ECF No. 1 (also at ECF No. 63-3); Defendants' Statement of Undisputed Material Facts, with supporting declarations and exhibits, ECF No. 56-2; Plaintiff's Response to Defendants' Statement of Undisputed Facts, and Statement of Additional Material Facts, with supporting declarations and exhibits, ECF No. 63-1 et seq; and Defendants' Reply to Plaintiff's Response, ECF No. 64-1.

incarcerated at California State Prison, Sacramento (CSP-SAC).

- At all times relevant to this action, defendants Dr. N. Riaz, M.D., and Dr. V.M. Duc., M.D., were both employed by CDCR as a Physician and Surgeon at CSP-SAC, while defendant H. Nguyen was employed by CDCR as an Associate Clinical Social Worker at CSP-SAC.

- In April 2009, while incarcerated at California State Prison Los Angeles County (CSP-LAC), plaintiff was diagnosed with "left lower extremity drop foot with neuropathy in phalanges." ECF No. 63-4 at 70. On April 28, 2009, plaintiff was issued a Comprehensive Accommodation Chrono (CDCR Form 7410) ("chrono") for a bottom bunk on a ground floor cell, and provided with a "left foot AFO [ankle foot orthosis] brace." ECF No. 63-4 at 71. These accommodations were designated "P" for permanent. Id.

- In June 2012, while incarcerated at Pelican Bay State Prison (PBSP), plaintiff was issued another chrono that maintained permanent accommodations for a ground floor cell, bottom bunk and left lower extremity AFO brace. ECF No. 56-2 at 32.

- On June 9, 2013, while incarcerated at CSP-SAC, plaintiff fell. A chronic care progress note prepared the next day, on June 10, 2013, by Dr. Jian Ma, M.D., noted that plaintiff's left foot drop was secondary to a gunshot wound in his back.[2] ECF No. 63-6 at 1. Dr. Ma noted that plaintiff's "accidental fall" resulted in the "breaking of his ankle/foot orthotics [sic] and the abrasion of his hands." Id. Dr. Ma stated that plaintiff "attributes the fall to his foot drop and it appears that his ankle/foot orthotic did not seem to function that well yesterday." Id. Dr. Ma sent plaintiff "back to the Orthotic Clinic to get his ankle/foot orthotic replaced" and "advised the patient to be careful when he ambulates. He should walk slowly to avoid another fall." Id.

- On July 8, 2014, nonparty Dr. B. Hamkar, M.D., examined plaintiff at CSP-SAC for low back pain. In his clinical progress note, Dr. Hamkar stated that plaintiff had "a history of musculoskeletal low back pain. Currently, he is taking Tylenol. He has no red flags; clinically doing well, no acute issues. He says he is able to do his activities without any limitations. He

---

[2] At his deposition, plaintiff testified that he was shot in 1996 and had left foot drop when he entered prison; he was further diagnosed with neuropathy while in prison in 2009. ECF No. 63-4 at 15 (Turner Depo. at 15:1-12).

6

does have right footdrop and has a prosthesis and gets around." ECF No. 56-2 at 11. Dr. Hamkar advised plaintiff to "[c]ontinue Tylenol p.r.n. Stretching exercises discussed with him. No indications for any imaging studies." Id.

- On October 15, 2014, at CSP-SAC, defendant Dr. Riaz met with plaintiff for the purpose of reassessing his chrono. Dr. Riaz completed a new chrono, rescinding the accommodation for a ground floor cell. ECF No. 63-4 at 72. Dr. Riaz continued plaintiff's accommodations for a lower bunk and left AFO brace, as well as orthotic shoes and insoles, each of which was designated permanent. Id. As set forth in Dr. Riaz's progress note, he reasoned:

> The patient was placed on MD line today to redo the 7410 that he has on file from another prison, Salinas Valley Prison. He needs the 7410 done from here. However, the patient is very noncompliant. He does not want to be seen and is refusing examination. I have noticed the patient walking in and out of the office without any ankle-foot orthotic (AFO). He was noticed walking with a mild limp on the left side due to history of left foot drop. His gait is steady. I noticed on the 7410 he has a ground floor cell authorized. He has a bottom bunk and he has AFO orthotics for lower extremities. He has insoles and orthotic shoes. I will continue all those recommendations except ground floor cell. The patient does not qualify for that. He is not wheelchair bound and he is not using a wheelchair. He is able to ambulate even without the help of an AFO. The patient said that he has an AFO but he is not wearing it today. I will update his 7410. His last chronic care visit was on 07/08/2014. Please refer to the note for detailed information of assessment, plan, and examination. He will be called back as scheduled for the next Chronic Care Program (CCP). The patient has no other acute issues. He refused further assessment and examinations.

ECF No. 56-2 at 14.

- Meanwhile, on approximately April 30, 2015, plaintiff was transferred to the CSP-SAC Psychiatric Services Unit (PSU) from CSP-SAC's Enhanced Outpatient Program (EOP)/ Administrative Segregation Unit (ASU). The PSU is a secured housing unit for inmates at the EOP level of care and provides the most intensive level of outpatient mental health care within CDCR's Mental Health Services Delivery System (MHSDS). Each PSU has a Behavioral Incentive Program (BIP) with criteria for achieving higher levels of success with added privileges; inmates can achieve higher levels by, inter alia, attending group treatment activities.

- On May 1, 2015, plaintiff had his initial individual session with defendant Nguyen. As an Associate Clinical Social Worker, defendant Nguyen was responsible for the assessment and

treatment of inmates in the MHSDS. ECF No. 56-2 at 50-1 (Nguyen Decl. ¶¶ 3, 5).

- On May 5, 2015, plaintiff completed and submitted an inmate appeal (CDCR Form 602 HC) (Log No. SAC HC 15030862) requesting that he be housed on a lower tier and that his lower tier chrono be reinstated. ECF No. 63-3 at 10. Plaintiff explained:

> Being housed on upper tier is jeperdizing my life & safety. I have a walking impediment that effects my balance because my left leg drags. I'm in fear for my life & safety as my lower tier chrono has been illegally taken as my chrono was given by a Dr. & won on 602 already.

Id.

- On May 7, 2015, plaintiff again met individually with Nguyen, and informed her that he had been transferred to the upper tier. Plaintiff showed Nguyen his AFO and stated that he could not ambulate stairs.[3]

- On May 11, 2015, plaintiff completed a Reasonable Accommodation Request (CDCR Form 1824), requesting that his lower tier chrono be reinstated. ECF No. 63-3 at 23. Plaintiff explained:

> I cannot go up & down stairs on a regular basis because of parelisis in my left leg and foot pacifactly therein I can't participate for fear of falling down the stairs. I'm being denied toparticipate in the program, service & activities. [¶] I'm physically disabled to that extent if I go up and down stair[s] daily I will fall. "I'm terified."

Id.

- On May 14, 2015, Nguyen informed an unidentified correctional officer about plaintiff's request for a lower tier.

- On May 28, 2015, an unidentified correctional officer informed Nguyen that plaintiff had been observed to "run to his canteen" despite his ankle and foot deformities.

- On June 26, 2015, defendant Dr. Duc interviewed plaintiff pursuant to the First Level Review of his administrative appeal. ECF No. 56-2 at 36-7; see also 63-3 at 10, 13. Dr. Duc

---

[3] Nguyen also avers that plaintiff showed her a 2012 inmate appeal *denying* his request for a lower tier. ECF No. 56-2 at 51 (Nguyen Decl. ¶ 6). There appears to be no record evidence of a 2012 appeal denying plaintiff's request for a lower tier. Moreover, plaintiff avers that he "maintained a lower tier chrono for 7 years until . . . 2014." ECF No. 1 at 25 (Turner Decl. ¶ 1). Nevertheless, plaintiff does not dispute Nguyen's statement. See ECF No. 63-1 at 7-8 (Pltf. Response to Defs. SUF #28).

8

recounted Dr. Riaz's October 2014 clinical notes in plaintiff's Unit Health Record (UHR), including Dr. Riaz's observations and conclusion that plaintiff did not require a ground floor cell. Dr. Duc noted that, "[a]s a matter of fact, today the patient was also walking normally into the clinic. He had only, again, a very mild limp on the left side due to left foot drop." ECF No. 56-2 at 36. On examination of plaintiff's extremities, Dr. Duc noted: "Full range of motion of all joints. Fairly normal musculature. The patient has foot drop on the left side. He is wearing a brace. He walks with a mild limp; however, his gait is stable and normal." Id. Dr. Duc concluded:

> From the examination today and review of the UHR there is at the present time no indication to have the ground floor. The patient already has a lower bunk Chrono. However the patient['s] gait will be monitored and if he were to develop difficulty with walking up the stairs or if he experienced falls walking up or down the stairs, then a chrono for lower tier may be considered.

Id.

- Later on June 26, 2015, Dr. Duc partially granted plaintiff's administrative appeal at First Level Review, denying his request for a lower tier cell on the following grounds:

> You were seen and interviewed today. According to the evaluation of today and after reviewing the e[electronic] UHR, particularly the chart notes of Dr. Riaz of October 15, 2015 [sic], there is no indication for a lower tier. You already have a chrono for lower bunk which is valid until October 2015.

ECF No. 63-3 at 13.

- On June 28, 2015, plaintiff attempted to submit another inmate appeal requesting a lower tier chrono (Log No. SAC HC 15031162). ECF No. 63-3 at 21. The appeal was summarily rejected because it sought to bypass lower levels of review. Id. at 20-2.

- On June 29, 2015, while handcuffed behind his back and escorted by two correctional officers, plaintiff fell "head over heels" down 10 to 15 stairs. See ECF No. 63-5 at 10. He was transported to the prison clinic on a gurney. Id. at 12. Plaintiff complained of pain in his "back, lower extremities and back of his head;" he sustained abrasions on his "right scapula, upper mid back and mid back on his spine." Id. The attending physician, defendant Dr. Duc, noted that plaintiff "has a hx [history] of L drop foot and is wearing an ankle brace. However [illegible] his

9

gait is not well controlled and he sometimes slipped and fell." Id. at 10. Dr. Duc prescribed pain medication, ordered a lumbar x-ray and noted that plaintiff needed a "chrono for lower tier – has already lower bunk." Id. at 9, 10. The x-ray results revealed no acute injuries. Id. at 7, 12. Dr. Duc amended plaintiff's chrono to restrict him to a lower tier with limited stairs. ECF No. 56-2 at 17 (Duc Decl. ¶ 10).

- On July 8, 2015, plaintiff informed Nguyen that he had fallen down the stairs the previous Monday (June 29, 2015). Nguyen noted that "CO Bettencourt [] reported that they are aware of the chrono for lower tier and [] waiting for an available cell[.]" ECF No. 56-2 at 60.

- On July 9, 2015, plaintiff was moved to the lower tier. ECF No. 56-2 at 62 (Nguyen July 15, 2015 clinical notes, as reported to her by CO Bettencourt). Plaintiff testified that it took two to three weeks after Dr. Duc issued the lower tier chrono before he was moved to a lower cell. ECF No. 63-4 at 44 (Turner Depo. at 44:24-45:5).

- On July 15, 2015, at his individual session with Nguyen, plaintiff expressed frustration regarding his lack of progress in the BIP. Plaintiff told Nguyen he had been unable to attend group treatment sessions because housed on an upper tier, and believed he should not be penalized for this; plaintiff thought he should be accorded a higher BIP level for this reason.

- In her July 15, 2015 treatment notes, Nguyen indicated that she had reviewed plaintiff's treatment record when he was in the ASU, and that plaintiff had not attended groups there despite being housed in a lower tier. ECF No. 56-2 at 62. In her July 21, 2015 treatment notes, Nguyen noted plaintiff's statement that "he was on leg restraints while in ASU and unable to attend groups." ECF No. 56-2 at 64. Seeking further information, Nguyen "emailed previously ASU PC regarding leg registrants [sic] while [plaintiff] was in ASU." Id.

### B. Disputed Facts

The parties dispute the scope of Dr. Riaz's October 15, 2014 evaluation of plaintiff, particularly the extent to which Dr. Riaz reviewed plaintiff's medical record and whether Dr. Riaz independently evaluated plaintiff's ability to ambulate stairs.

The parties make the following representations:

- Dr. Riaz avers that he "conducted an examination" of plaintiff, although plaintiff was

"very noncompliant and did not want to be seen;" and that "[d]uring the examination [Dr. Riaz] observed plaintiff walking in and out of the office without any ankle-foot orthotic (AF). He was walking with a mild limp on the left side due to a history of left drop foot. However, his gait was steady." ECF No. 56-2 at 8-9 (Riaz Decl. at ¶¶ 3-5). Dr. Riaz reviewed plaintiff's "most recent medical progress note completed three months earlier" in which Dr. Hamkar had opined plaintiff "was able to do his activities without any limitation." Id. at 9 (Riaz Decl. at ¶ 7). Dr. Riaz "elected to continue all [plaintiff's] previous accommodations except for the ground floor cell" based on his "observation of Mr. Turner ambulating steadily without any AFO, and a review of his medical file, especially his most recent medical progress note." Id. at 9 (Riaz Decl. at ¶ 8). Dr. Riaz avers that he "discussed my decision [to rescind plaintiff's ground floor cell chrono] with Mr. Turner." Id. at 9 (Riaz Decl. at ¶ 10).

- Plaintiff avers that he "brought up [his] medical issues for accommodations [but] was basically ignored;" and that Dr. Riaz "never examined me . . . While I was in there with him, I don't recall him doing anything, not examining me . . . I talked about it. He didn't talk about it. He just dismissed me. . . . I didn't find out that my chrono was rescinded until later on when I was being moved [upstairs] . . . He never told me. And he never acknowledged anything that I said to him about my concerns." ECF No. 63-4 at 24-5 (Turner Depo. at 24:9-12; 25:4-6, 11-2, 17-25). In his most recent declaration, plaintiff avers:

> On October 15, 2014, I was seen by defendant Dr. Riaz. Dr. Riaz briefly discussed my asthma issues. He did not perform a physical exam. He did not palpate my back, leg, or ankle. He did not observe or inquire about my ability to ambulate stairs. The encounter lasted between two and five minutes.

ECF No. 63-7 at 1-2 (Turner Decl. ¶2)

The parties also dispute whether Dr. Duc, on June 26, 2015, reviewed plaintiff's medical record and accommodation history beyond Dr. Riaz's October 15, 2014 clinical notes.

**V.     Analysis**

Defendants do not dispute that plaintiff's left extremity foot drop and neuropathy constitute serious medical needs within the meaning of the Eighth Amendment. Each seeks summary judgment on the ground that he or she did not act with a deliberately indifferent state of

11

mind. Accordingly, the question as to each defendant is whether there is evidence from which a reasonable jury could find – or a triable issue of material fact regarding – subjective knowledge of a substantial risk of harm, and a purposeful failure to respond to that risk. See Jett, 439 F.3d at 1096.

### A. Defendant Dr. Riaz

To prevail, plaintiff must demonstrate that Dr. Riaz knew when he rescinded the lower tier chrono on October 15, 2014 that plaintiff's foot drop and neuropathy created a substantial risk of a dangerous trip and fall (or similar accident) on the stairs. It is not enough that Dr. Riaz should have known of this danger, or that a reasonable doctor would have identified the risk. See Toguchi, 391 F.3d at 1057.

The undisputed facts establish that Dr. Riaz concluded, rightly or wrongly, that plaintiff was able to ambulate well enough to be safely housed on an upper tier. Plaintiff has identified no evidence suggesting that Dr. Riaz's stated reasons for this decision were not his actual subjective reasons. See id. (subjective knowledge of risk required for liability). Rather, plaintiff argues that the risk was sufficiently obvious that knowledge of it should be presumed. He contends that Dr. Riaz was obligated by the nature of plaintiff's disability and the existence of a past lower-tier chrono to maintain that accommodation absent a thorough examination and assessment of plaintiff's ability to navigate stairs, and that his failure to do so meets the threshold for deliberate indifference. The court disagrees.

First, it is not apparent that the risk was sufficiently obvious to support an inference of knowledge. While both a foot drop and the lack of normal sensation in a foot present obvious challenges to ease of ambulation, especially on uneven surfaces or stairs, they do not necessarily imply a substantial risk of injury on uneven surfaces or stairs. Second, even if the risk of injury was sufficiently obvious, that would support only a rebuttable presumption of knowledge on the part of Dr. Riaz. See Farmer, 511 U.S. at 842-43. The undisputed evidence that Dr. Riaz personally observed plaintiff to walk with a reasonably steady gait, and to voluntarily forgo use of his prescribed orthotic devices, is sufficient to rebut any presumption that Dr. Riaz knew plaintiff

////

faced a substantial risk of injury from navigating stairs.[4]

Third, the fact that plaintiff had previously been issued a lower-tier chrono indicates nothing more than a difference of opinion among doctors about the appropriate accommodations for plaintiff. A difference of medical opinion is insufficient as a matter of law to establish deliberate indifference. Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). Where there is a difference of opinion, plaintiff can prevail only if the course of treatment defendant chose was medically unacceptable under the circumstances, and was chosen in conscious disregard of an excessive risk to plaintiff's health or safety. Jackson, 90 F.3d at 332. The record in this case is devoid of evidence that Dr. Riaz's choice to rescind the chrono was "medically unacceptable."

The only factual dispute here is a narrow one involving the scope and details of the examination Dr. Riaz conducted on October 15, 2014. That dispute is not material to the ultimate issue of deliberate indifference. Under either party's version of the facts, the encounter was brief and the assessment quite limited. It may well have been inadequate, as plaintiff argues. But an examination inadequate to reasonably support the rescission decision would establish no more than negligence or medical malpractice. That is not enough. See Estelle, 429 U.S. at 105-106. An Eighth Amendment violation cannot be established by demonstrating that Dr. Riaz should have done more to assess plaintiff's ability to navigate stairs. Because the moving defendants have identified a failure of proof on the essential element of deliberate indifference, plaintiff's proffered evidence regarding the scope of the examination cannot defeat summary judgment.[5]

---

[4] As noted in the recitation of undisputed facts, plaintiff's record also reflects that he had fallen once before, more than a year before Dr. Riaz rescinded his lower-tier chrono. See ECF No. 63-6 at 1. Even assuming Dr. Riaz's knowledge of this incident, see Jett, 439 F.3d at 1097 (prisoner opposing summary judgment entitled to inference that doctor was aware of items in medical record), any inference of knowledge of risk is rebutted by the subsequent medical note stating that plaintiff was "able to do his activities without any limitations," ECF No. 56-2 at 11, as well as by Dr. Riaz's own observations.

[5] Plaintiff argues that "[a] deliberate indifference claim is stated when a doctor only minimally examine[s] a prisoner." ECF No. 63 at 9 (citing Nielson v. Rabin, 746 F.3d 58, 63-64 (2nd Cir. 2014), and Scalia v. County of Kern, 308 F. Supp. 3d 1064 (E.D. Cal. 2018). Both cases cited by plaintiff addressed the cognizability of deliberate indifference claims at the pleading stage. Neither case involved facts similar to those here, and neither supports plaintiff's opposition to summary judgment in light of the evidence in this case.

For all these reasons, the court finds there are no triable issues of material fact regarding Dr. Riaz's culpable state of mind. Based on the evidence that is undisputed, even drawing all reasonable inferences in plaintiff's favor, Dr. Riaz is entitled to summary judgment.

### B. Defendant Dr. Duc

Plaintiff contends that Dr. Duc ratified or rubber-stamped Dr. Riaz's decision to rescind his lower tier chrono, without conducting an adequate assessment of plaintiff's physical limitations. Although Dr. Duc conducted an independent medical examination of plaintiff for the purpose of assessing his appeal, plaintiff argues that Dr. Duc did not consider the medical reasons supporting plaintiff's past lower tier chronos and failed to directly assess plaintiff's ability to ambulate stairs. Dr. Duc contends that he cannot be liable for a constitutional violation based solely on his involvement in the inmate appeals process, and that his medical decision reflects no more than a nonactionable difference of opinion from that of plaintiff.

As presented to Dr. Duc on First Level Review on June 26, 2015, plaintiff sought reinstatement of his lower tier chrono because he found "[b]eing housed on [the] upper tier is jeperdizing my life & safety. . . ." ECF No. 63-3 at 10. Plaintiff explained that he has "a walking impediment that effects my balance because my left leg drags." Id. Dr. Duc reviewed plaintiff's UHR, including the recent chrono issued by Dr. Riaz and Dr. Riaz's chart note dated October 15, 2014. ECF No. 56-2 at 17 (Duc Decl. ¶ 4). Dr. Duc observed that plaintiff "walk[ed] into the medical clinic normally. He had a steady gait. He only had a very mild limp on his left side due to a history of left foot drop." Id. (Duc. Decl. ¶ 5); see also ECF No. 56-2 at 36-8 (Dr. Duc's clinical notes). Dr. Duc concluded that, "[a]s a result of my examination of Mr. Turner, and my review of his Unit Health Record, I determined that there was no medical indication for a lower tier." ECF No. 56-2 at 17 (Duc Decl. ¶ 6). However, Dr. Duc stated that "if [plaintiff] were to develop difficulty with walking up the stairs or if he experienced falls walking up or down the stairs, then a chrono for lower tier may be considered." ECF No. 56-2 at 37. Two days later, plaintiff fell down 10 to 15 stairs, and Dr. Duc issued the lower tier chrono.

Prisoners do not have "a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855

F.2d 639, 640 (9th Cir. 1988)). Accordingly, the prison grievance procedure does not confer any substantive constitutional rights upon inmates and actions challenging the denial of inmate appeals generally do not serve as a basis for liability under § 1983. Id.; George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (prison official's involvement in administrative appeals process cannot serve as a basis for liability in a Section1983 action); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates."); Lewis v. Ollison, 571 F. Supp. 2d 1162, 1170 (C.D. Cal. 2008) ("participation in the prison grievance process does not give rise to a cause of action"). As the Seventh Circuit has observed:

> Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.

George, 507 F.3d at 609-10. Accordingly, Dr. Duc's denial of plaintiff's appeal request cannot support liability.

Moreover, to the extent that Dr. Duc made an independent medical determination subject to Eighth Amendment standards, plaintiff has presented no evidence that his state of mind was deliberately indifferent to a known and serious risk of injury. To the contrary, the undisputed evidence shows that Dr. Duc believed there to be little risk. As discussed more fully regarding Dr. Riaz, the doctor's disagreement with plaintiff's own assessment of risk, or with prior assessments by other doctors at other institutions, cannot be deliberately indifferent unless it was medically unreasonable. Plaintiff has not tendered evidence that would support a finding Dr. Duc's judgment was medically unacceptable.

For these reasons, summary judgment should be granted for defendant Dr. Duc.

////

////

### C. Defendant Ms. Nguyen

Defendant Nguyen is a clinical social worker who worked with plaintiff during the relevant period at CSP-SAC's secure Psychiatric Services Unit (PSU).[6] In response to defendants' motion for summary judgment, plaintiff does not dispute Ms. Nguyen's statement that she lacked the authority to move plaintiff to a lower tier. Rather, plaintiff argues that Ms. Nguyen "failed to timely intervene to have Turner's lower tier housing reinstated and continued to insist that Turner 'program' (i.e., attend group and individual counseling sessions) despite the known necessity of ambulating staircases while handcuffed in order to attend counseling." ECF No. 63 at 6.

The undisputed facts are inconsistent with Nguyen knowingly disregarding a serious risk to plaintiff's health and safety over which she had any control. First, Nguyen avers that she informed a correctional officer about plaintiff's request for a lower tier, ECF No. 56-2 at 54, 56, but was informed that plaintiff had been observed "to run to his canteen," id. at 58. Moreover, she avers that plaintiff showed her a 2012 appeal *denying* his request for a lower tier. ECF No. 56-2 at 51 (Nguyen Decl. ¶ 6). Plaintiff does not dispute this fact. ECF No. 63-1 at 7-8. Whether or not Nguyen's memory is accurate – the record does not include an appeal that matches her description – the undisputed evidence supports her subjective belief that a decision had been made in 2012 that a lower tier was not necessary. Plaintiff has not tendered evidence that raises a triable issue as to the culpability of Nguyen's state of mind.

More fundamentally, plaintiff has presented no evidence demonstrating that Nguyen had any affirmative duty to advocate for the reinstatement of his chrono, or that she had discretion to modify plaintiff's participation in the PSU treatment program to accommodate his difficulty in navigating stairs. Accordingly, there is no evidence linking own Nguyen's acts or omissions to the alleged violation of plaintiff's constitutional rights. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Accordingly, she cannot be held liable as a matter of law.

For these reasons, summary judgment should be granted for defendant Nguyen.

---

[6] Defendant Nguyen was initially identified by plaintiff (and, therefore, this court) as a psychiatrist. See ECF No. 1 at 2; ECF No. 7 at 3.

## VI. Qualified Immunity

Because the facts do not show a constitutional violation, the court need not reach defendants' qualified immunity defenses. Saucier v. Katz, 533 U.S. 194, 201 (2001).

## VII. Conclusion

For the reasons explained above, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment, ECF No. 56, be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 10, 2019

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE